IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GLOBAL MUSIC RIGHTS, LLC, | ) | CASE NO.  1:21-MC-00063-JPC |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| SAGA COMMUNICATIONS, INC., | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.1.  Before the Court is Plaintiff's Motion to Transfer Venue and Motion to Compel.  (Doc. Nos. 1, 3.)  For the following reasons, the Court GRANTS the Motion to Transfer Venue (Doc. No. 3) and TRANSFERS the Motion to Compel (Doc. No. 1) to the Central District of California under Rule 45(f).

## I.      Factual and Procedural Background

Since late 2016, Petitioner Global Music Rights, LLC ("GMR") and Radio Music License Committee ("RMLC"), an organization that "represents the interests of the commercial radio industry on music licensing matters" https://radiomlc.org (last visited Sept. 29, 2021), have been engaged in antitrust litigation in the Eastern District of Pennsylvania and the Central District of California.  (Doc. No. 3-1 at 6.) In the original action brought by GMR in California, GMR alleged "that RMLC and its members, which collectively own 10,000 stations and account for 90 percent of terrestrial radio revenues in the United States, operate as a price-fixing cartel."  (*Id.*)  The California litigation consists of three cases, including the case

1

brought by RMLC against GMR originally in the Eastern District of Pennsylvania.[1]  *See Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS.  Since the individual members of RMLC are not parties to the litigation, GMR must obtain discovery from the individual members through the subpoena process.  (Doc. No. 3-1 at 6.)  Throughout the California litigation, discovery disputes and discovery issues have arisen that have been addressed by the court.  *See Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS (Doc. Nos. 106, 112, 126-27, 145, 153, 158, 161-63, 183, 193, 195, 211, 230, 237); *Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:18-mc-00170-TJH-AS.

On September 4, 2019, GMR served a subpoena *duces tecum* on Respondent Saga Communications, Inc. ("Saga").  (Doc. No. 19 at 6.)  GMR asserts that Saga "plays a leading role" in RMLC.  (*Id.*)  GMR asserts it "has served nearly 21 identical subpoenas on leading members of the RMLC cartel, including Saga."  (Doc. No. 3-1 at 6.)  Counsel for RMLC also represents many RMLC members, including Saga.  (*Id.* at 5-6.)  *See also Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS.

On September 19, 2019, Saga submitted its responses and objections to GMR's subpoena.  (Doc. No. 3-4.)  Saga argued the subpoena violated Fed. R. Civ. P. 45, as GMR ignored the rule's requirement to take reasonable steps to avoid imposing undue burden or expense on a non-party, and asserted that "most, if not all, of the Requests are unreasonably cumulative of information that GMR could more easily get from RMLC."  (*Id.* at 3.)  In response to many requests for production, Saga objected that the material sought

---

[1] The Eastern District of Pennsylvania granted GMR's motion to dismiss the action for lack of personal jurisdiction and transferred the case to the Central District of California, *Radio Music License Committee, Inc. v. Global Music Rights, LLC*, Case No. 2:16-cv-06076-CDJ (Doc. No. 117), where it was consolidated with the original GMR action.  *See Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS; *Radio Music License Committee, Inc. v. Global Music Rights, LLC*, Case No. 2:19-cv-03957-TJH-AS.

was not relevant to any party's claims or defenses and was not proportional to the needs of the case.  (*Id.* at 10-38.)  Saga stated in response to several requests for production, almost all of which are subject to the pending motion to compel (Doc. No. 1), that it would not produce any documents in response.  (Doc. No. 3-4 at 10-38.)

Since November 2019, counsel for GMR and Saga have met and conferred, as well as exchanged correspondence, regarding the responses to the subpoenas by the radio groups represented by Latham & Watkins, LLC.  (Doc. No. 3-2 at 3; *see also* Doc. No. 19-1, Ex. 5-14.)

On January 2, 2020, United States Magistrate Judge Alka Sagar ruled on GMR's motion to compel discovery in the underlying litigation against RMLC.  (Doc. No. 3-6.)  In denying GMR's motion without prejudice, Magistrate Judge Sakar addressed several issues, including the "number and scope of RMLC's document custodians and the relevance of discovery related to performing rights organizations ("PRO") other than GMR."  (Doc. No. 3-2 at 3; *see also* Doc. No. 3-6.)  In a footnote, Magistrate Judge Sakar wrote, "The Court notes that GMR has issued multiple subpoenas to the Directors personally and the radio stations where the Directors are employed.  (Joint Stip. at 80; Lovejoy Decl. ¶ 36).  Thus, GMR will have an opportunity to determine if responsive information is not being fully captured by RMLC's custodians." (Doc. No. 3-6 at 8 n.2.)

On August 6, 2021, GMR filed a motion to compel discovery and a motion to transfer venue in this court.  (Doc. Nos. 1, 3, 19.)

On August 26, 2021, District Judge Terry J. Hatter, Jr., on joint stipulation by the parties, modified the scheduling order so that fact discovery closes on January 14, 2022.  *Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS (Doc. No. 225).

On August 27, 2021, Saga filed responses in opposition to the motion to compel and the motion to transfer venue.  (Doc. Nos. 24-25, 27.)  On September 3, 2021, GMR filed replies in support of its motions. (Doc. Nos. 30-32.)

In their briefing regarding the pending motion to compel, the parties argue about the scope of Judge Sakar's January 2, 2020 Order.  (Doc. No. 19 at 13; Doc. No. 27 at 13-14; Doc. No. 32 at 10.)

## II.    Law and Analysis

### A.  Applicable Standards

Under Rule 45 of the Federal Rules of Civil Procedure, a party may command a nonparty to produce documents. Fed. R. Civ. P. 45(a)(1).  Rule 45 permits the Court to quash a subpoena that subjects a nonparty to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted).  Under Rule 26, district courts may take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor."  *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

Under Rule 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45.  Should such a transfer occur, "if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the

4

attorney may file papers and appear on the motion as an officer of the issuing court." *Id.* "To enforce its order, the issuing court may transfer the order to the court where the motion was made." *Id.*

As this Court has recently explained:

> In evaluating whether there are "exceptional circumstances" warranting transfer, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments). However, in some circumstances, transfer may be warranted "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. *Id. See also Parker Compound Bows, Inc. v. Hunter's Manufacturing Co., Inc.*, No. 5:15-mc-00064, 2015 WL 7308655, at * 1 (N.D. Ohio Nov. 19, 2015).

> In determining whether transfer is appropriate under Fed. R. Civ. P. 45(f), federal courts have considered a number of factors, including "'case complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *Parker Compound Bows, Inc.*, 2015 WL 7308655 at *1 (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). *See also, e.g., Fed. Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C. 2015). The decision of whether to transfer is discretionary. *See, e.g., Federal Trade Commission v. A+ Financial Center*, *LLC*, No. 1:13-mc-50, 2013 WL 6388539 at *2-3 (S.D. Ohio Dec. 6, 2013); *Moon Mountain Farms LLC v. Rural Community Insurance Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014).

*Drips Holdings, LLC v. Quotewizard.com, LLC*, No. 1:21-MC-00017-PAB, 2021 WL 1517919, at *5 (N.D. Ohio Apr. 16, 2021).

## B. Application

The Court determines that, given the exceptional circumstances present in this case, transfer of this matter to the Central District of California pursuant to Fed. R. Civ. P. 45(f) is appropriate.

First, the parties have been litigating the earliest-filed case in the Central District of California for approximately five years, while the two related actions have been pending for approximately two years. "While, as a general matter, a Fed. R. Civ. P. 45 subpoena-related motion 'will always be resolved by a court less familiar with the underlying litigation,'" the Central District of California's understanding of the issues implicated in this discovery dispute exceeds "mere 'familiarity.'" *Drips Holdings, LLC*, 2021 WL 1517919, *6 (citing and distinguishing *Isola USA Corp. v. Taiwan Union Tech. Corp*., No. 15-MC-94003-TSH, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015)).[2]  Over this considerable amount of time, the Central District of California has "developed a deep and rigorous understanding of the issues implicated in this dispute," which weighs in favor of transfer.  *Id.* (citing *Parker Compound Bows, Inc. v. Hunter's Mfg. Co., Inc.*, No. 5:15-mc-00064, 2015 WL 7308655, at *1 (N.D. Ohio Nov. 19, 2015)).

Second, Magistrate Judge Sakar in the Central District of California has already ruled on a number of discovery issues in the underlying litigation.  *See Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS (Doc. Nos. 106, 112, 126-27, 145, 153, 158, 161-63, 183, 193, 195, 211, 230, 237); *Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:18-mc-00170-TJH-AS.  Indeed, in their briefing on the motion to compel, the parties disagree as to the scope of Magistrate Judge Sakar's January 2, 2020 order.  (Doc. No. 19 at 13; Doc. No. 27 at 13-14; Doc. No. 32 at 10.)  There is no question Magistrate Judge Sakar, as opposed to this Court, is in the best position to interpret the scope of the January 2, 2020 order and its implications on this discovery dispute.  *Green v. Cosby*, 216 F. Supp. 3d 560, 565 (E.D. Penn. 2016) (where scope of ruling in issuing court was disputed and did not "explicitly resolve" the dispute, transfer was appropriate). *See also Parker Compound*

---

[2] In *Isola*, one of the reasons the Magistrate Judge recommended the Court deny the motion to transfer was that to grant the motion simply because the issuing court had more familiarity with the underlying action would allow the exception to swallow the rule.  *Isola USA Corp. v. Taiwan Union Tech. Corp*., No. 15-MC-94003-TSH, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015).

*Bows*, 2015 WL 7308655, at *2 (where underlying litigation had been pending more than a year and issuing court had "dealt with an array of discovery issues" already, the issuing court had "developed an understanding of the factual predicates implicated in this motion to quash"); *In re Disposable Contact Lens Antitrust Litigation*, 306 F. Supp. 3d 372, 378-79 (D.D.C. 2017) ("Furthermore, with respect to discovery proceedings in particular, the Issuing Court 'has already supervised substantial discovery'—which is a factor that weighs in favor of transfer under Rule 45(f).") (quoting *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.RD. 10, 12 (D.D.C. 2014)); *Judicial Watch, Inc. v. Valle De Sol, Inc.*, 307 F.RD. 30, 35 (D.D.C. 2014) (where underlying litigation had been pending for four years and had involved "'innumerable discovery disputes,'" the issuing court was "in a far better position than this one to evaluate the relevance of, and necessity for," the documents requested by the subpoena).

Third, if this Court evaluated the motion to compel, it would have to weigh the need for discovery against Saga's alleged undue burden in producing the documents at issue. *Drips Holdings, LLC*, 2021 WL 1517919, *6. The Court rejects Saga's argument that the motion to compel deals with "narrow issues" unrelated to the underlying litigation. (Doc. No. 24 at 10-11.) "The Court does not evaluate the nonparty's burden in a vacuum. Rather, the Court must balance [Saga's] alleged undue burden against the need for discovery of the records in the underlying action." *Drips Holdings, LLC*, 2021 WL 1517919, *6 (citing *In Re: Modern Plastics Corp.*, 890 F.3d. 244, 251 (6th Cir. 2018)). The Central District of California is in a better position to conduct such an evaluation. *Id. See also Parker Compound Bows*, 2015 WL 7308655, at *2 ("Second, the issuing court's expertise is particularly valuable here because this motion is complex, and raises a number of interlocking issues from the underlying litigation.").

The Court rejects Saga's comparison to *Hausauer v. Trustedsec, LLC*, Case No. 1:20mc101, 2020 WL 6826368 (N.D. Ohio Nov. 20, 2020). (Doc. No. 24 at 9-11.) In *Drips Holdings, LLC*, Judge Barker, in distinguishing the instant case before her from the one she decided in *Hausauer*, described the *Hausauer*

dispute as involving a "'very specific discovery issue,' the resolution of which was unlikely to conflict with any ruling from the MDL court," and a "straightforward disagreement over the scope of electronic discovery." *Drips Holdings, LLC*, 2021 WL 1517919, at *7.  The issue in *Hausauer* was whether the non-party substantially complied with the subpoena when it did not "engage in the 'iterative process'" regarding search methods for the non-party's electronically stored information.  *Hausauer*, 2020 WL 6826368, at *6. "This dispute is considerably more complex and . . . implicates substantive issues at the heart of the underlying action . . . ." *Drips Holdings, LLC*, 2021 WL 1517919, at *7.

For all of the foregoing reasons, the Court finds exceptional circumstances exist that must be balanced against Saga's interests in "obtaining local resolution of the motion."  Advisory Committee Notes, Fed. R. Civ. P. 45 (2013 Amendments).

The parties disagree regarding the burden imposed on Saga as a result of a transfer.  GMR argues Saga is a "sophisticated business" that would not have an issue litigating this dispute in the Central District of California.  (Doc. No. 3-1 at 12.)  In addition, Saga is represented by the same counsel who represent RMLC in the underlying litigation, and counsel has "capably litigated in that district for over three years now."  (*Id.*)  In addition, GMR asserts Saga is an atypical non-party, since it is an RMLC member, it is represented on RMLC's Executive Committee, Saga's President, Ed Christian, was Chairman of the RMLC for most of the time relevant to the litigation, and it is a "leading member of the RMLC conspiracy."  (*Id.* at 12-13.)  Saga, on the other hand, asserts that transfer would "unduly burden" it since the Central District of California is "over 2,000 miles away from Saga's state of incorporation and principal place of business in Michigan."  (Doc. No. 24 at 13.)  While Saga concedes Latham & Watkins, LLP has offices in Los Angeles, Saga asserts that the Latham & Watkins attorneys "who have primarily represented Saga with respect to the instant subpoena dispute" are in Washington, D.C.  (*Id.*)  In addition to travel costs, Saga maintains a transfer "would force Saga's attorneys to research, analyze, and brief the Motion to Compel all

8

over again under 9th Circuit law—all at duplicative expense to Saga." (*Id.*)  Relying on *Isola USA Corp.*, Saga argues the Court should reject GMR's argument that the "national scope of Saga's business ameliorates the burden posed by transcontinental litigation."[3]  (*Id.*)  GMR responds that Saga fails to mention that the same D.C. counsel have represented RMLC in the underlying litigation for five years without having to travel to California, and all discovery conferences, including hearings on motions to compel, have occurred by telephone.  (Doc. No. 30 at 10.)  GMR asserts Magistrate Judge Sakar has not indicated she intends to start holding in-person hearings, and given the COVID-19 pandemic, is unlikely to do so any time soon. (*Id.*)  Furthermore, GMR argues there is no indication the parties will need to re-brief the motion to compel, and even if Magistrate Judge Sakar would require new briefs, "that is a problem entirely of Saga's own making" by not consenting to have the motion brought in the Central District of California in the first place. (*Id.*)

Setting aside whether Saga is a non-party in name only, the remote possibility that Saga's counsel may have to travel from Washington, D.C. to California instead of Ohio for a future possible in-person hearing is outweighed by the exceptional circumstances discussed above.  *Drips Holdings, LLC*, 2021 WL 1517919, *7.  "Moreover, the Advisory Committee Notes to Fed. R. Civ. P. 45 encourages judges 'to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending,' irrespective of COVID-19-related teleconferencing practices."  *Id.*  In addition, the Court agrees with GMR that there is no indication the parties will need to re-brief the motion to compel.  Therefore, the Court anticipates the transfer will not present practical difficulties for Saga, a large company whose

---

[3] While Saga correctly states *Isola*'s proposition that the size and resources of a company, standing alone, do not create exceptional circumstances, Saga ignores the fact that the *Isola* court recognized that such considerations are part of the "transfer calculus."  *Isola USA Corp.*, 2015 WL 5934760, at *4.

Washington D.C. counsel representing them in this matter have been litigating on behalf of RMLC in the Central District of California for years.[4] *Id.* (citing *Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, No. 20-50286, 2020 WL 3104288, at *2 (E.D. Mich. June 11, 2020)).  The Court does not make such a transfer lightly; but here, the exceptional circumstances outweigh any burden of Saga's.  *Id.*

### III.    Conclusion

For all the reasons set forth above, the Court GRANTS the Motion to Transfer Venue (Doc. No. 3) and TRANSFERS the Motion to Compel (Doc. No. 1) to the Central District of California under Rule 45(f).

IT IS SO ORDERED.


Date:  October 8, 2021                                      *s/ Jonathan Greenberg*
                                                            Jonathan D. Greenberg
                                                            United States Magistrate Judge

---

[4] Attorney Jennifer Giordano was granted permission to appear *pro hac vice* in January 2017, while attorney David Johnson was granted permission to appear *pro hac vice* in July 2019.  *Global Music Rights, LLC v. Radio Music License Committee, Inc., et al*, Case No. 2:16-cv-09051-TJH-AS (Doc. Nos. 29, 94.)